UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:15-cv-00123-RJC

| | | |
|---|---|---|
| **RENEE M. HENSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| **NANCY A. BERRYHILL,**[1] | ) | |
| **Commissioner of** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Summary Judgment and Memorandum in Support, (Doc. Nos. 9, 9-1); and Defendant's Motion for Summary Judgment and Memorandum in Support, (Doc. Nos. 11, 12). The pending motions are ripe for adjudication.

I. BACKGROUND

A. Procedural Background

Plaintiff Renee M. Henson ("Plaintiff") seeks judicial review of Nancy A. Berryhill's ("Defendant" or "Commissioner") denial of her social security claim. In August 2012, Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act ("SSA") and Supplemental Security Income under Title XVI of the SSA. (Doc. No. 8 to 8-9: Administrative

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the Defendant herein. No further action needs to be taken pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

Record ("Tr.") at 13). Initially, Plaintiff alleged that she became disabled on August 1, 2007 but later amended her onset date to March 1, 2011. (Tr. 13, 30, 104). After conducting a hearing on October 30, 2013, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled according to the standards of the SSA from March 1, 2011 through December 13, 2013, the date of the ALJ's decision. (Id. at 10–23). Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Appeals Council denied the request, consequently making the ALJ's decision the Defendant's final decision. (Id. at. 1–5).

Plaintiff now seeks judicial review of the ALJ's decision under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Plaintiff filed her Complaint on June 23, 2015 and a Motion for Summary Judgment on October 30, 2015. (Doc. Nos. 1, 9). Defendant filed an Answer to Plaintiff's Complaint on August 28, 2015 and a Motion for Summary Judgment on January 28, 2016. (Doc. Nos. 7, 11, 12).

B. Factual Background

The question before the ALJ was whether Plaintiff was disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 13). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act.[2] Bowen v. Yuckert, 482 U.S. 137, 146 n5 (1987). Plaintiff's alleged disability derives from both physical and mental symptoms. Physically, Plaintiff alleged disability by way of degenerative disc disease. (Tr. 47). Later, on appeal before this Court, Plaintiff claims that her obesity also contributes to her

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

2

alleged disability. (Doc. No. 9-1 at 1). Mentally, Plaintiff alleged disability due to major depressive disorder and adjustment disorder with panic attacks. (Tr. 47). Combined, Plaintiff argues that these impairments limit her in "sitting, standing, lifting, postural, regular attendance at work, stress tolerance, and concentration, persistence and pace." (Doc. No. 9-1 at 1).

After reviewing Plaintiff's record and conducting a hearing, the ALJ found that Plaintiff did not suffer from a disability as defined in the SSA. (Tr. 10–23). In reaching his conclusion, the ALJ used the five-step sequential evaluation process established by the Social Security Administration for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;
> (4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and
> (5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. at 21–22).

Navigating the sequential evaluation, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since March 1, 2011, the alleged onset date. (Id. at 15). At the second step, the ALJ found that the Plaintiff had the following severe impairments: "back, leg, and hip pain due to lumbar spondylosis and lumbar sacroiliac degeneration…." (Id.). At the third step,

3

the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 …." (Id. at 17).

Subsequently, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform "light work." In particular, the ALJ found that Plaintiff retained the RFC "to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds and she should avoid concentrating exposure to hazards." (Id.). When making this finding, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Id.). The ALJ further opined that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Id.).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work. (Id. at 21). At the fifth and final step, the ALJ determined that, based on the testimony of a vocational expert ("VE") and "considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." (Id. 21–22). Therefore, the ALJ concluded that the Plaintiff was not under a disability from March 1, 2011, through December 31, 2011, the date of the decision. (Id. at 22).

Plaintiff now comes before the Court requesting a reversal of Defendant's final decision or, in the alternative, entry of an award of benefits, or remand of her claim to Defendant for approval of benefits or other appropriate consideration. (Doc. No. 9-1 at 2). In doing so, Plaintiff argues that the ALJ improperly assessed: (1) the severity of Plaintiff's mental impairment during

4

the step two analysis; (2) Plaintiff's obesity and the impact it had alone and in combination with her other impairments; (3) Plaintiff's medical record in relation to disorders of the spine during the step three analysis; (4) the weight given to the various medical opinions; and (5) the credibility attributable to Plaintiff's testimony. (Id. at 4). In response, Defendant argues that the ALJ properly: (1) relied on substantial evidence when he determined that Plaintiff's mental limitations were non-severe; (2) factored in Plaintiff's obesity and physical impairments, (3) found inconsistencies between Plaintiff's allegations and her treating physician's opinions and the medical record as a whole; and (4) determined Plaintiff's credibility based on the comparison of her alleged limitations and her medical record as a whole. (Doc. No. 12 at 1).

## II. STANDARD OF REVIEW

Regarding review of the Commissioner's decision, the SSA, 42 U.S.C. § 405(g) and § 1383(c)(3) limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla, and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782

F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401) (brackets in original); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

A. The ALJ correctly assessed Plaintiff's mental impairments during step two of his analysis.

Step two of the evaluation process requires the ALJ to determine if a claimant's impairment or impairments are "severe" or "non-severe." 20 C.F.R. § 404.1520(a)(4)(ii). A "non-severe" impairment "does not significantly limit [a claimant's] physical or mental ability to do basic work activities." Id. at § 404.1522(a). In the context of mental impairments, "basic work activities" include understanding and carrying out simple instructions, use of judgment, dealing with changes in a routine work setting, responding to supervision and usual work situations, and the capacity to see, hear, and speak. Id. at § 404.1522(b).

Here, the ALJ found Plaintiff's "medically determinable mental impairments of depression and anxiety with panic attacks … non-severe." (Tr. 16). Upon review, the Court finds that the ALJ relied on substantial evidence to come to this conclusion. The ALJ first notes that Plaintiff's mental symptoms were controlled through prescribed medication during the relevant time period.

6

(Id. at 15). The ALJ then recalled Plaintiff's testimony. At her hearing, Plaintiff stated that, in terms of functioning in a work setting, she was fine mentally. (Id.). It was her physical symptoms she found debilitating. (Id.). Finally, the ALJ looked to Plaintiff's daily living activities; social functioning; concentration, persistence or pace; and decompensation. (Id. at 16–17). The ALJ recounted Plaintiff's routine of driving, providing childcare, providing pet care, doing household chores, shopping, managing finances, reading, watching television, and using the computer. (Id. at 16). These activities, combined with medical records which indicated no problems with memory or attention, proved to the ALJ that Plaintiff did not have any limitations in the above four functional areas. (Id.).

Plaintiff argues that the ALJ's determination was incorrect. First, Plaintiff argues that the ALJ's reliance on the medications provided to Plaintiff is contradictory. Plaintiff asks how the ALJ can state that Plaintiff takes medication that controls her symptoms while simultaneously asserting that Plaintiff's testimony indicates that she is not currently taking medications. (Doc. No. 9-1 at 5). The Court finds that, even if the ALJ contradicted himself in certain respects, Plaintiff nonetheless testified that her mental problems did not affect her in a work setting. (Tr. 37).

Second, Plaintiff points to her primary care physician's 2008 notes which indicate panic attacks, mood swings, and sleep disturbance. (Doc. No. 9-1 at 6). These notes have minimal relevance. Plaintiff's 2008 mental symptoms fall outside the pertinent time period. What's more, Plaintiff has since sought treatment and has been prescribed medication. (Tr. 15–16). Since then, the reports of Dr. Buzzanell repeatedly stated that Plaintiff denied depression, anxiety, panic attacks, or suicidal ideation. (Id. at 199, 203, 206, 210, 214, 218, 222, 224, 227, 230, 233, 257, 260, 265, 269, 273, 278–79, 281–82, 285, 288–89, 291–92, 296–97, 300–01, 303–04, 308). Only

7

a few times did the reports indicate that Plaintiff complained of anxiety, yet she nonetheless denied depression, panic attacks, suicidal tenancies, or the inability to concentrate. (Id. at 238, 241). Once, the records indicate that Plaintiff seemed "slightly depressed," yet she denied feeling a sense of hopelessness. (Id. at 253).

Lastly, Plaintiff points to her testimony during her hearing, arguing that her description of her current medication, Atarax, inferred that it was not working. (Doc. No. 9-1 at 7, n 7). Plaintiff stated the medication "is supposed to keep you calm." (Tr. 37). Plaintiff argues that the use of the word "supposed" indicates that the medication was not effective. Again, the Court does not find Plaintiff persuasive. Even if the ALJ were to read into Plaintiff's statement with such an inference, the Plaintiff immediately testified thereafter that her mental symptoms did not impair her abilities in the work place. (Id. at 37).

B. The ALJ did not commit reversible error for omitting Plaintiff's obesity in his step two analysis.

The ALJ must evaluate a claimant's obesity at every step of the sequential evaluation. SSR 02-1p; see also, Sawyer v. Astrue, 775 F. Supp. 2d 829, 839 (E.D.N.C. 2011); McHone v. Astrue, No. 1:10CV273, 2011 WL 6370371, at *5 (W.D.N.C. Dec. 20, 2011) (unreported). Citing this rule, Plaintiff asserts that the ALJ erred in omitting her obesity from his decision. While the Court agrees with Plaintiff that the ALJ failed to mention obesity in his decision, the Court finds this omission excused.

To begin with, Plaintiff failed to list obesity explicitly in her application for disability. Rather, Plaintiff alleged disability due to degenerative disc disease, major depressive disorder, and adjustment disorder with panic attacks. (Tr. 47, 118). Accordingly, the ALJ focused on those specific ailments, ultimately finding severe impairments of lumbar spindylosis and

8

lumbar/sacroiliac degeneration. (Id. 15). Although Plaintiff did not specifically claim disability due to her obesity, such an omission does not bar Plaintiff's argument. The ALJ must "meaningfully discuss" a claimant's obesity within the sequential analysis as long as he is put on notice of Plaintiff's condition. Winston v. Astrue, No. 4:11-CV-107-D, 2012 WL 4086448, at *3 (E.D.N.C. Sept. 17, 2012); McHone v. Astrue, No. 1:10CV273, 2011 WL 6370371, at *5 (W.D.N.C. Dec. 20, 2011) (unreported). ALJ's must treat obesity with such vigilance because of its importance as a complex, chronic disease that significantly impacts the assessment of disabilities. SSR 02-1P, *2. Obesity can cause limitation of function and "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." Id. at *3, *6; 20 C.F.R. § Pt. 404, Subpt. P, App. 1; see also Fleming v. Barnhart, 284 F. Supp. 2d 256, 271 (D. Md. 2003).

An ALJ may receive notice of a claimant's obesity from the claimant's description of limitations commonly associated with obesity or when the medical record provides ample evidence of a claimant's obesity. McHone, 2011 WL 6370371, at *5; Gross v. Astrue, No. CIV.A. JKB-09-1456, 2010 WL 1328462, at *3 (D. Md. Mar. 26, 2010) (unreported). Here, as discussed below, the record clearly evidences Plaintiff's obesity in Dr. Buzzanell's reports, thus triggering the ALJ's duty to describe obesity and its effects on plaintiff's impairments.

Defendant argues that the ALJ did incorporate evidence of obesity by way of his reliance on Dr. Buzzanell's medical records. Specifically, Defendant argues that the ALJ, through his review of Dr. Buzzanell's reports, recognized the limits of obesity which only applied to Plaintiff's ability to sit and stand. (Doc. No. 12 at 9). Plaintiff's obesity, Defendant concludes, did not affect her ability to execute general activity. (Id.).

9

Defendant's argument rests on the records of Dr. Buzzanell, not the ALJ's decision itself. This seemingly ignores Social Security Ruling 02-1p, which requires the consideration of obesity throughout the sequential analysis. SSR 01-1p, 2002 WL 34686281, at *3 (Sept. 12., 2002). However, there are exceptions to the duty of discussing obesity. Of critical importance to this case, an ALJ is excused from specifically considering a claimant's obesity when he relies on medical records that adequately portray the claimant's obesity and adopts the conclusions of the doctors aware of claimant's obesity. Winston, 2012 WL 4086448, at *4 (citing Shrewsbury v. Astrue, No. 7:11CV229, 2012 WL 2789719 (W.D .Va. July 9, 2012) (unpublished)).

Given the above exception, the Court agrees with Defendant. The ALJ relied heavily on the record developed by Dr. Buzzanell, which is replete with mentions of Plaintiff's obesity and BMI. (Tr. 192, 196, 200, 207, 211, 214, 218, 222, 225, 228, 231, 234, 250, 253, 257, 260, 265, 269, 273, 279, 282, 285, 289, 291, 292, 296, 301, 304). In fact, several portions of Dr. Buzzanell's records indicate that Plaintiff's obesity exacerbated her pain. (Id. at 191, 209, 217, 221, 224, 230, 233). Treatment plans for Plaintiff even include methods to help control her weight. (Id. at 215, 223, 232, 234, 239). Dr. Buzzanell's records therefore capture Plaintiff's obesity, excusing the ALJ's failure to mention obesity within his decision. While the ALJ did not subsequently attribute great weight to Dr. Buzzanell's medical opinion, the ALJ's omission of Plaintiff's obesity nevertheless falls within the above exception. (Id. at 19–20). See Shrewsbury, 2012 WL 2789719, at *5 (stating that the ALJ relied on "medical records of the doctors who treated Shrewsbury's obesity," not necessarily medical opinions).

C. The ALJ failed to properly support his step three conclusion.

While arguing that the ALJ did not properly assess Plaintiff's obesity in his decision, Plaintiff also asserts that she met all of the elements for disorders of the spine found within Listing 1.04A. (Doc. No. 9-1 at 13). Listing 1.04A provides:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. <u>Evidence of nerve root compression</u> characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) ….

20 C.F.R. § Pt. 404, Subpt. P, App. 1. To find root compression, the Fourth Circuit requires all four symptoms of neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and, if there is involvement of the lower back, positive straight-leg raising test. Radford v. Colvin, 734 F.3d 288, 293 (4th Cir. 2013) (finding, however, that these symptoms do not have to all be present simultaneously).

Here, the ALJ summarily wrote, "There are insufficient findings on either examination or diagnostic test workup to confirm the presence of an impairment or combination of impairments which meets or equals the criteria of any impairment listed therein." (Tr. 17). Plaintiff argues that this bare conclusion fails to address evidence of nerve root compression within the record, such as Plaintiff's: (1) complaints of pain; (2) limited spine movement; (3) decreased motor function as evidence through the limp in her left leg and her antalgic gait; and (4) several positive straight-leg tests found within the medical records. (Doc. No. 9-1, 10–11). Additionally, Plaintiff asserts that the only MRI on file—which did not find nerve root compression—dated back to 2008. By referencing this MRI, Plaintiff not only argues that the record lacks definitive proof against finding

11

nerve root compression, but she also alludes to the ALJ's violation of his duty to develop the record because he failed to order another, more recent MRI.³ (Id. at 12–13).

After reviewing the ALJ's decision, the Court turns to Fourth Circuit precedent, which has established that conclusory language such as that used by the ALJ here is unacceptable. In Fox v. Colvin, the Fourth Circuit evaluated the following language:

> Although the claimant has "severe" impairments, they do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations (20 CFR, Subpart P, Appendix 1). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments. In reaching this conclusion, the undersigned has considered, in particular, sections 9.00(B)(5) and 11.14.

632 F. App'x 750, 754–55 (4th Cir. 2015). The Fox Court then concluded that "the ALJ's analysis was likewise perfunctory and offered nothing to reveal *why* he was making his decision." Id. at 755 (citing Radford, 734 F.3d at 295).

As in Fox, the Court now finds the ALJ's explanation insufficient to be considered substantial evidence supporting his step three conclusion. In their Memorandum of Support, Defendant points to the record and argues that, because the 2008 MRI was negative for nerve root impingement, Plaintiff cannot make a claim under Listing 1.04A. (Doc. No. 12 at 10 n. 4). Essentially, Defendant invites this Court to "to review the record and cure the ALJ's deficiency

---

³ The Court finds that the ALJ did not have a duty to order Plaintiff a new MRI—especially when Plaintiff was represented by counsel. See Craig v. Chater, 76 F.3d 585, 591 (4th Cir. 1996) ("[I]n pro se cases, ALJs have 'a duty to assume a more active role in helping claimants develop the record.'") (quoting Sims v. Harris, 631 F.2d 26 (4th Cir. 1980). Rather, it is generally the duty of the claimant to prove that they are disabled. 20 C.F.R. § 416.912(a)(1). ALJ's may order consultative examinations ("CE's") at their discretion. CFR §416.917. However, the record does not show that a CE was necessary in this case. See 20 C.F.R. §§ 404.1519(a)(b) and 416.919(a)(b).

ourselves." Fox, 632 F. App'x at 755. However, it does not matter if substantial evidence exists within the record so much as what the ALJ wrote to explain his reasoning. Id. It is well established that "it is not within the province of a reviewing court to determine the weight of the evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "Where an insufficient record precludes a determination that substantial evidence supported the ALJ's denial of benefits, this court may not affirm for harmless error." Patterson v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 658 (4th Cir. 2017). Here, as in Fox, the Court finds that it "cannot begin to engage in a 'meaningful review' when there is nothing on which to base a review." Fox, 632 F. App'x at 755.

D. The ALJ properly determined the weight of various opinion evidence.

ALJs must assign the weight of credibility to opinion evidence. 20 C.F.R. § 404.1527. Plaintiff argues that Dr. Buzzanell's medical opinions deserve more weight than afforded by the ALJ. (Doc. No. 9-1 at 16). In particular, Plaintiff argues that the ALJ failed to cite inconsistencies within the record to justify giving a treating physician's opinion lower weight. (Id.). Defendant responds, stating Dr. Buzzanell's treating notes did not correspond to his conclusion, which narrowed Plaintiff's physical abilities considerably. (Doc. No. 12 at 11). After reviewing the record, the Court agrees with Defendant.

The Court notes that Dr. Buzzanell has been treating Plaintiff since 2011, thus qualifying his status as Plaintiff's treating physician. (Tr. 18); C.F.R. § 404.1527(a)(2). While treating physicians' opinions are generally given considerable weight, they may be disregarded if "there is persuasive contradictory evidence." Evans v. Heckler, 734 F.2d 1012, 1015 (4th Cir. 1984); see also 20 C.F.R. § 404.1527(c)(4) (allowing weight of medical opinions to be determined by consistency with the record as a whole). In assigning treating physician opinions less weight, the ALJ must do so with specificity. The ALJ must give "good reasons" for the weight he assigns to

13

claimants' treating source's opinions. Id. (quoting 20 C.F.R. § 404.1527(c)(2)). Otherwise, "the ALJ's analysis [is] insufficient and merits vacating the judgment." Id.

Here, the ALJ assigned Dr. Buzzanell's medical opinion little credible weight. (Tr. 19–20). He justified this determination by stating that Dr. Buzzanell's opinion was "not supported by his own treatment records, which show that [Plaintiff] was maintained on the same medications and dosage throughout the period at issue." (Id. at 19). Furthermore, the ALJ concluded that Dr. Buzzanell's opinion was not supported by other evidence within the record. (Id.).

The ALJ recognized Dr. Buzzanell's records and findings earlier in his decision. Those records showed that Plaintiff had "good clinical efficacy with treatment on numerous occasions." (Tr. 18). The ALJ also noted that Dr. Buzzanell's treatment records demonstrate that, in August 2011, Plaintiff improved her ability to laterally bend, rotate, and extend and that her sensation was intact and her gait, bulk, and strength were all normal. (Id.). The ALJ then added to his analysis Plaintiff's daily living activities to justify his determination of Plaintiff's RFC. (Id. at 19). The Court therefore concludes that the ALJ cites sufficient contradictory evidence—both in Dr. Buzzanell's own treatment records and the medical records as a whole—to conclude that little weight should be given to Dr. Buzzanell's medical opinion.

The Court also finds that the ALJ sufficiently addressed Dr. Hinnant's opinion. Although his report seems to indicate that Plaintiff's mental symptoms have significant limitations, the ALJ gave little weight to Dr. Hinnant's opinion because "it [was] not supported by his own narrative report or with treatment records." (Id. at 20, 312). Furthermore, the ALJ noted that Dr. Hinnant's October 7, 2013 report postdated the period at issue. (Id. at 20). Plaintiff's onset date was March 1, 2011 and the date she was last insured was December 31, 2011. (Id.).

14

E.  The ALJ properly determined Plaintiff's credibility.

In assessing a claimant's testimony regarding the intensity, persistence, and limiting effects of their symptoms, the ALJ "evaluate[s] [claimants'] statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether [they] are disabled." 20 C.F.R. § 416.929(c)(4); Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996). If the ALJ determines that a claimant is not credible, he must "build an accurate and logical bridge from the evidence to his conclusion." Brown v. Comm'r Soc. Sec. Admin., No. 16-1578, 2017 WL 4320263, at *14 (4th Cir. Sept. 29, 2017) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)).

Here, the ALJ determined that Plaintiff's "allegations of pain and other limiting symptoms … were not completely credible." (Tr. 19). In support of his credibility determination, the ALJ emphasized that Plaintiff had been receiving treatment for the pain in her back, hip, and legs and maintained the same dosage of medications throughout the relevant period. (Tr. 18). The ALJ then recapitulates Dr. Buzzanell's treatment records and declares that these reports do not support the limitations Plaintiff testified to. (Id. 18–19). The ALJ also relies again upon Plaintiff's daily living activities. (Id. at 19). Upon review, the Court finds that the ALJ relied on substantial evidence to reach his credibility determination.

In arguing that she is in fact credible, Plaintiff first claims that the ALJ failed to mention the qualifications Plaintiff put on her daily living activities. (Doc. 9-1 at 19–20). Plaintiff then points to Dr. Buzzanell's record, which shows that Plaintiff's pain was exacerbated due to factors such as weather changes and changing positions and evidences objective testing. (Id. at 21). Additionally, Plaintiff asserts that the ALJ ignored the credibility findings of the DDS psychological reviewers. (Id.).

15

The Court recognizes that the ALJ relies heavily on Plaintiff's daily living activities. As mentioned above, the ALJ mentioned that Plaintiff "drives, does childcare, did pet care, does household chores, shops, manages finances, reads, watches television, and uses the computer." (Tr. 16). However, the Court also notes that Plaintiff is correct that the ALJ omits certain qualifying language. Plaintiff claimed that when cooking, she often has to sit down and has resorted to faster, easier meals, such as frozen foods, in order to reduce the pain it causes. (Id. at 35, 38, 135). When cleaning, Plaintiff stated it now takes her three hours to do a 15 minute chore. (Id. at 35, 134–35). Plaintiff also testified that, while she does go to the grocery store, she never goes alone. (Id. at 41). In terms of pet care, Plaintiff tends to the family cat, but her husband and daughter care for the dog. (Id. at 134).

In Brown v. Comm'r Soc. Sec. Admin., the Fourth Circuit held that merely listing a claimant's activities does not automatically equate to substantial evidence if those activities were "minimal daily activities" qualified by the claimant in ways that do not contradict claims of disabling pain. No. 16-1578, 2017 WL 4320263, at *14 (4th Cir. Sept. 29, 2017). The court concluded that when a claimant's daily activities were "minimal," they neither established that the claimant could engage in substantial physical activity nor contradicted the claimant's testimony of disabling pain. Id. By "minimal," the Court described activities such as cooking, driving, and household chores that caused plaintiff great pain or required intermittent periods of rest. Id.

Here, the Court finds that, as in Brown, Plaintiff references "minimal activities" and further qualifies those activities with testimony of experiencing pain and the need to take breaks. (Tr. 133–40). It therefore comes down to the ALJ's reliance on other evidence besides Plaintiff's daily activities to justify his credibility determination. Upon review, the Court notes that the ALJ lists the findings of Dr. Buzzanell, which indicated that Plaintiff had "good clinical efficacy with

16

treatment." (Tr. 18). While Plaintiff claims that these same findings feature various complaints of pain, the Court also notes that Dr. Buzzanell's records show Plaintiff walking a mile a day as per his instructions. (Tr. 267, 284). The Court cannot reweigh the evidence. Rather, it is limited to determining if there was substantial evidence relied upon by the ALJ. Although the ALJ did not accurately recount the limitations put forth on Plaintiff's daily activities, he nonetheless recounted medical evidence to support his conclusion that Plaintiff's testimony was not entirely credible.[4]

## IV. CONCLUSION

After review of both parties' arguments, the ALJ's decision, and the record, the Court finds for Defendant except in regards to the ALJ's step three analysis. Fourth Circuit precedent demands more than a conclusory sentence stating that there were insufficient findings to confirm the presence of an impairment found in the Listings. As such, the Court cannot find that the ALJ relied upon substantial evidence in reaching his determination and therefore remands this case for a more thorough explanation of step three findings.

**IT IS THEREFORE ORDERED,** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 9), is **GRANTED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 11), is **DENIED**;

3. The Court hereby **VACATES** the decision of the Commissioner and **REMANDS** this case for further administrative proceedings consistent with this Order; and

---

[4] The Court notes that the ALJ relies upon Plaintiff's daily living activities in determining the severity of Plaintiff's impairments and Plaintiff's RFC. However, because the ALJ determined Plaintiff's credibility using other evidence in the record, the credibility of her qualifications on her daily living activities were reduced in kind, thus allowing the ALJ's reference of her daily activities elsewhere in his decision.

4. The Clerk of Court is directed to close this case.

Signed: November 9, 2017

Robert J. Conrad, Jr.
United States District Judge

SEALED DOCUMENT with access to All Parties/Defendants.